UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| KENNETH G. KEEL, | ) | No. CV 08-07591-RMT (VBK) |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND ORDER DISMISSING |
| | ) | COMPLAINT WITH LEAVE TO AMEND |
| v. | ) | |
| | ) | |
| ARNOLD SCHWARZENEGGER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On December 8, 2008, Kenneth G. Keel, (hereafter referred to as "Plaintiff"), a state prisoner proceeding pro se, filed a "Civil RICO Complaint," pursuant to 18 U.S.C. §1964(c), accompanied by "Plaintiff's Notice and Request for Judicial Notice," which contained Appendices A through L.  The Complaint purports to allege claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1964.  Plaintiff has named as Defendants Governor Arnold Schwarzenegger; Henry T. Nicholas III; Pete Wilson; Todd Spitzer; Justice for Homicide Victims, Inc., and Does 1-30.

Plaintiff alleges that Defendants have used "income derived from a pattern of racketeering activity to form and operate a public policy enterprise, which has caused, and continues to cause Plaintiff to be

'injured in his business or property' within the meaning of 18 U.S.C. §1964(c)."   Plaintiff also alleges claims entitled "federal due process, conspiracy against rights" and "common law conspiracy." (Complaint at ¶¶ 1 and 2.)  Plaintiff alleges that from January 1999 continuing through 2006, Defendants have continuously engaged in wrongful acts. (Id. at ¶ 5.)

Plaintiff contends that Proposition 184, the Three Strikes Law, has led to sentences that are grossly disproportionate to the triggering offense. (Id. at ¶ 37.)  Plaintiff alleges that on October 15, 1997, he was arrested for petty theft.  After being convicted by a jury, Plaintiff received an indeterminate sentence under California's Three Strikes Law of 25 years. (Id. at ¶ 38.)

Plaintiff alleges that in approximately January 1999 through early 2006 Defendant Nicholas directed and caused Broadcom employees to obtain controlled substances.  Defendant Nicholas allegedly orchestrated and perpetuated a massive scheme that involved fraudulent stock options backdating, falsifying corporate records, intentionally falsifying accounting and lying to shareholders. (Id. at ¶¶ 40, 41.) Plaintiff alleges that Defendant Nicholas laundered proceeds derived from the activities described above and that Orange County and state officials protected Defendant Nicholas from arrest and criminal prosecution. (Id. at ¶¶42-43.)

Plaintiff alleges in early 2002 he formed an activity group named INSIDE FACTS ("IF-FSP") which had a membership of approximately 50 similarly situated individuals who endorsed and joined the "Amend California's Three Strikes" ("ACTS") campaign to pass a 2004 ballot measure.  In early 2004, supporters to amend the Three Strikes Law announced that Proposition 66 would be placed on the ballot, which

1  would allow resentencing of nonviolent individuals currently serving
2  a 25-year sentence. (Id. at ¶ 48; see Appendix "D.")   Plaintiff,
3  currently serving an indeterminate life term for one count of petty
4  theft, alleges he would have been eligible for a resentencing hearing
5  within 180 days after this measure took effect and qualified for
6  release forthwith. (Id. at ¶ 49.)   Plaintiff alleges that inside the
7  2004 official voter handbook distributed to the public the argument
8  against Proposition 66 contained material misrepresentations of fact
9  and deceptive statements.   Plaintiff alleges the ballot argument,
10  signed by Defendants Arnold Schwarzenegger, Bill Lockyer and Harriet
11  Salarno, inaccurately stated that Proposition 66 would "flood our
12  streets with thousands of dangerous felons, including rapists, child
13  molesters and murderers." (Id. at ¶ 50.)

14      Plaintiff alleges in late October 2004 Defendant Wilson contacted
15  Defendant Nicholas via telephone and requested that Defendant Nicholas
16  join a group of individuals, including Defendants Wilson,
17  Schwarzenegger and Spitzer, to defeat Proposition 66.   Plaintiff
18  alleges Defendant Nicholas agreed to participate in defeating
19  Proposition 66 by "financing the scheme to deceive likely voters,
20  using nearly $4 million dollars derived from allegedly unlawful
21  activities." (Id. at ¶ 54.)

22      On November 2, 2004, Proposition 66 was defeated. (Id. at ¶ 58.)

23      In late 2007, Defendant Nicholas helped underwrite two crime
24  initiatives for the November 2008 ballot, Proposition 6 ("Safe
25  Neighborhoods Act") and Proposition 9 ("Marsy's Law").   Plaintiff
26  alleges Defendant Nicholas invested $5.9 million dollars to qualify
27  both measures for the November 4, 2008 election. (Id. at ¶ 68.)

28      On May 14, 2008, the Securities and Exchange Commission ("SEC")

filed a complaint against Defendant Nicholas and Broadcom officers Henry Samueli, William J. Ruehle and David Dull wherein Broadcom officers were "alleged to have orchestrated and perpetuated the largest-ever scheme that involved fraudulent stock options backdating, falsifying corporate records, intentionally false accounting and lying to shareholders, for personal gain." (Id. at ¶ 70.)

On June 4, 2008, a federal grand jury indictment against Defendant Nicholas was filed which charged him with conspiracy to distribute and possess with intent to distribute controlled substances; conspiracy to acquire controlled substances by fraud and deception; and maintaining and using a place for the purpose of distributing and using controlled substances. (Id. at ¶ 72.)

Plaintiff alleges that Defendant Nicholas gave $25 million dollars derived from illegal activities to Defendant Justice for Homicide Victims to finance Defendant Nicholas' ongoing public policy enterprises and objectives. (Id. at ¶ 73.)

**PLAINTIFF'S CLAIMS**

Plaintiff's first claim for relief is a civil RICO claim "Investment of Racketeering Income" in violation of 18 U.S.C. §1962(a) by Defendant Nicholas. Plaintiff alleges that Defendant Nicholas through the enterprise of his company Broadcom conspired to distribute narcotics. Plaintiff alleges various predicate acts to further the narcotics conspiracy and then alleges unlawful investment of racketeering income in violation of 18 U.S.C. §1962(a). (Id. at ¶¶ 80-92.) Plaintiff alleges that Defendant Nicholas used part of his racketeering income (approximately $3.5 million dollars) in the formation and operation of a public policy enterprise which is

comprised of a group of individuals associated for a common or shared purpose of knowingly influencing California's public policy, which was to defeat Proposition 66, a Three Strikes reform initiative, and prevent resentencing hearings for qualified individuals including Plaintiff. (<u>Id</u>. at ¶ 100.)

Plaintiff alleges in 2006 Defendant Nicholas used $157,000 of his racketeering income to fund Proposition 83 ("Jessica's Law"). In 2007, Defendant Nicholas authored Proposition 9 ("Marsy's Law") and in 2008 Defendant Nicholas used his racketeering income to collect signatures to qualify Proposition 6 ("Safe Neighborhoods Act") for the November 4, 2008 ballot. (<u>Id</u>. at ¶ 102.)

Plaintiff alleges as a proximate result of Defendant Nicholas' unlawful investment, Plaintiff has been directly "injured in his business or property" within the meaning of 18 U.S.C. §1964(c). Specifically, Plaintiff alleges he was directly and distinctly injured by being deprived of a resentencing hearing and immediate release from prison under Proposition 66, which would have resulted in gainful employment as a paralegal and/or self-employment opportunities, to wit, "intentional interference with prospective economic relations, prospective business and prospective contracts." (<u>Id</u>. at ¶ 103.)

Plaintiff's second claim for relief is a "federal due process/conspiracy against rights" violation against Defendants Nicholas, Schwarzenegger, Wilson, Spitzer and Justice for Homicide Victims, Inc. Plaintiff alleges beginning in late October 2004 and continuously thereafter Defendants knowingly conspired to interfere with Plaintiff's rights by using ill-gotten proceeds to transmit false and misleading information to California's electorate regarding Proposition 66. (<u>Id</u>. at ¶¶ 105-106.)

1    Plaintiff's third claim for relief is a common-law conspiracy
2  claim against Defendants Nicholas, Schwarzenegger, Wilson, Spitzer and
3  Justice for Homicide Victims, Inc.   Plaintiff alleges in October 2004
4  Defendants engaged in the formation and operation of a conspiracy to
5  interfere with Plaintiff's prospective economic relations, prospective
6  business relations, prospective contractual relations wherein
7  Defendants used approximately $3.5 million dollars in ill-gotten
8  proceeds to form and operate a public policy enterprise to prevent
9  Plaintiff from receiving a resentencing hearing under Proposition 66.
10  (Id. at ¶¶ 108-112.)

11    Plaintiff seeks compensatory and punitive damages against
12  Defendants.   Plaintiff also seeks an Order setting aside the November
13  2, 2004 election results with respect to Proposition 66 and for a
14  preliminary and permanent injunction to enjoin the California
15  Department of Corrections and Rehabilitation from enforcing the
16  provisions of Proposition 9. (Complaint at pp. 41-42.)

17

18                              **STANDARD OF REVIEW**

19    A complaint may be dismissed for lack of subject matter
20  jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).   Neitzke v.
21  Williams, 490 U.S. 319, 327 n. 6, 109 S. Ct. 1827, 104 L. Ed. 2d 338
22  (1989) (unanimous decision) (patently insubstantial complaint may be
23  dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.
24  "Whenever it appears by suggestion of the parties or otherwise that
25  the court lacks jurisdiction of the subject matter, the court shall
26  dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).   A
27  challenge to the Court's subject matter jurisdiction can be raised at
28  any time, including sua sponte by the Court.   Emrich v. Touche Ross

1   and Co., 846 F.2d 1190, 1194 n. 2. (9th Cir. 1988).

2        In civil rights cases in which the Plaintiff appears pro se, the

3   pleadings must be construed liberally, so as to afford the Plaintiff

4   the benefit of any doubt as to the potential validity of the claims

5   asserted. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623

6   (9th Cir. 1988).  If, despite such liberal construction, the Court

7   finds that the complaint should be dismissed for failure to state a

8   claim, the Court has the discretion to dismiss the complaint with or

9   without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th

10  Cir. 2000).  A pro se litigant should be given leave to amend, unless

11  it is clear that the deficiencies of the complaint cannot be cured by

12  amendment. Lopez, 203 F.3d at 1130-31; Cato v. United States, 70 F.3d

13  1103, 1106 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dept.,

14  839 F.2d 621, 623 (9th Cir. 1998); Noll v. Carlson, 809 F.2d 1446, 1448

15  (9th Cir. 1987).

16        A pro se pleading must be held to less stringent standards than

17  formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519,

18  520 (1972).  However, while a pro se litigant is entitled to

19  considerable leeway when the Court construes his pleadings, those

20  pleadings still must meet some minimum threshold in providing the

21  defendants with notice of what it is that they allegedly did wrong.

22  Brazil v. U.S. Dept. of Navy, 66 F.3d 193, 199 (9th Cir. 1995), cert.

23  denied, 517 U.S. 1103 (1996).  A pro se litigant must follow the Rules

24  of Procedure like any other litigant.  Ghazali v. Moran, 46 F.3d 52,

25  54 (9th Cir.), cert. denied, 516 U.S. 838 (1995).

26        The preferred practice of pleading is to state various claims for

27  relief in separate counts. Haynes v. Anderson & Strudwick, Inc., 508

28  F.Supp. 1303, 1307 n.1 (E.D. VA. 1981). Thus, for example, in a civil

rights action, each alleged constitutional deprivation should be pled as a separate claim. <u>Pryor v. Cajda</u>, 662 F.Supp. 1114, 1115 (N.D. Illinois 1987). The purpose of this requirement is to clarify the issues that will be addressed in the ensuing litigation. <u>O'Donnell v. Elgin, J & E Ry. Co.</u>, 338 U.S. 384, 392 (1949); <u>Williamson v. Columbia Gas & Electric Corp.</u>, 186 F.2d 464, 469 (3d Cir. 1950), <u>cert. denied</u>, 341 U.S. 921 (1951). Grouping different claims together results in muddled pleadings, <u>Pryor</u>, 662 F.Supp. at 1114, and places the unnecessary burden on the Court and the defendants to decipher which facts support which claims. <u>Haynes</u>, 508 F.Supp. at 1307 n.1.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007); <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007).

## **DISCUSSION**

For all of the following reasons, Plaintiff's Complaint should be dismissed.

### **A. Plaintiff Has Failed to State a RICO Claim Under 18 U.S.C. §1964(c)**.

RICO provides a private right of action for "[a]ny person injured in his business or property" by a RICO violation. 18 U.S.C. §1964(c). Plaintiff seeks relief pursuant to RICO statutes, 18 U.S.C. §1962(a) and (c). 18 U.S.C. §1962(a) prohibits a person who receives income

derived from a pattern of racketeering activity from using or investing such income in an enterprise engaged in interstate commerce.[1] 18 U.S.C. §1962(c) prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity.[2]

To state a civil RICO claim pursuant to 18 U.S.C. §1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004); Diaz v. Gates, 420 F.3d 897, 898 (9th Cir. 2005); Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001); Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).

Additionally, 18 U.S.C. § 1964 imposes a standing requirement: in order to seek a civil remedy for a RICO violation, a plaintiff must show that the RICO violation proximately caused an injury to his business or property. Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008); Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S.

---

[1]    Section 1962(a) states:
"It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title 18, United States Code to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

[2]    Section 1962(c) states:
"It shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or a collection of unlawful debt."

479, 496 (1985).   To have standing under §1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property, and (2) that his harm was "by reason of" the RICO violation, which requires plaintiff to establish proximate causation.   Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992).   Proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged."   Id. at 268. In Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006), the Supreme Court held that courts must scrutinize the causal link between the RICO violation and the injury, identifying with precision the nature of the violation and the cause of the injury to the plaintiff.

Where the violation is not itself the immediate cause of the plaintiff's injury, proximate cause may be lacking. Whether a plaintiff has alleged an injury to business or property giving rise to standing under RICO is a question of law for the Court to determine and may properly be raised on a motion to dismiss.   See Oscar v. University Students Co-Op Ass'n., 965 F2d 780, 785 (9th Cir.)(en banc.), cert. denied, 506 U.S. 1020 (1992)(upholding dismissal of complaint for failure to allege an injury to property); Doe v. Roe, 958 F.2d 763, 767-768 (7th Cir. 1992).

RICO does not afford a civil remedy for all injuries caused by unlawful racketeering activities; only injuries to "business or property" are actionable.   18 U.S.C. §1964(c).   State law typically determines whether a given interest qualifies as "property."   Diaz v. Gates, 420 F.3d 897, 899 (9th Cir. 2005).   This limitation excludes recovery for personal injuries.   Oscar v. University Students Co-Op Ass'n., 965 F.2d 783, 785 (9th Cir. 1992)("[P]ersonal injuries are not compensable under RICO."); (Berg v. First State Ins. Co., 915 F.2d

460, 464 (9th Cir. 1990)).[3]  In addition, in the Ninth Circuit,
"injuries to property are not actionable under RICO unless they result
in tangible financial loss to the plaintiff." Oscar, 965 F.72d at 785
(plaintiffs fail to allege any pecuniary injury to their interests in
rental properties caused by alleged acts of racketeering);
Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1311 (9th Cir.
1992), cert. denied, 507 U.S. 1004 (1993)(affirming dismissal of RICO
where it was impossible to determine from the complaint whether
plaintiffs were alleging lost opportunity to realize profit or loss of
specific identifiable profit).

Plaintiff must show a concrete financial loss. Guerrero v.
Gates, 442 F.3d 697, 707 (9th Cir. 2006); Savage v. Council on
American-Islamic Relations, Inc., 2008 WL 2951281, at *13 (N.D. Cal.).
"Without a harm to a specific business or property interest - a
categorical inquiry typically determined by state law - there is no
injury to business or property within the meaning of RICO." Diaz v.
Gates, 420 F.3d 897, 900 (9th Cir. 2005)(en banc.), cert. denied, 546
U.S. 1131, (2006). A plaintiff cannot maintain a RICO claim where the
loss he has suffered is "purely speculative." Berg, 915 F.3d 463-64.

Plaintiff claims he has suffered injury to his business or
property by alleging he suffered a "loss of a resentencing hearing and
immediate release from prison under Proposition 66, which would have

---

[3]     The Ninth Circuit's decision finds support in language from
two Supreme Court cases: Reiter v. Sonotone Corp., 442 U.S. 330, 339,
99 S.Ct. 2326 (1979)(construing similar restriction in Clayton Act in
stating "[T]he phrase 'business or property' ... retains restrictive
significance.  It would, for example, exclude personal injuries ...");
Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S.  479, 105 S.Ct. 3292, 3297
(1985)(Marshall, J., dissenting)(RICO "permits recovery only for
injuries to business or property.  It, therefore, excludes recovery
for personal injuries.").

1  resulted in gainful employment as a paralegal and/or self-employment

2  opportunities, to wit: intentional interference with prospective

3  economic relations, prospective business and prospective contracts."

4  (Complaint at ¶ 103.)

5      All of the "injuries" alleged by Plaintiff are speculative.  In

6  contrast to <u>Diaz</u>, Plaintiff does not allege that he has actually lost

7  employment or employment opportunities because he was falsely

8  imprisoned and forced to defend against unjust charges.  Rather,

9  Plaintiff's allegations involve prospective damages which are not

10 compensable, absent concrete financial loss.  The alleged injury of

11 "lost business opportunities" does not constitute a RICO injury.

12 Plaintiff's claimed "employment opportunity" losses cannot be

13 characterized as a kind of tangible financial loss to a business

14 recoverable under RICO.  <u>Oscar</u>, 965 F.2d at 785.  Moreover, Plaintiff's

15 alleged loss of a resentencing hearing and immediate release from

16 prison under Proposition 66 is not a concrete financial loss.

17 Plaintiff offers no facts capable of supporting his injury to

18 "property or business".  Plaintiff's allegations merely recite what

19 may be considered a property interest under RICO and are insufficient

20 by themselves to state an injury thereunder. (<u>See</u> <u>Twombly</u>, 127 S.Ct.

21 at 1965 ("[A] formulaic recitation of the elements of a cause of

22 action will not do.")  Thus, because Plaintiff has not sufficiently

23 pled a RICO injury, he has no standing to bring a RICO claim.

24     Even assuming Plaintiff could allege standing to maintain a RICO

25 claim, his complaint fails, as Plaintiff must show some degree of

26 participation by the Defendants "in the operation or management of the

27 enterprise itself."  <u>Reves v. Ernst and Young</u>, 507 U.S. 170, 185

28 (1993).  One who has no managerial role is not liable under RICO.

Pedrina v. Chun, 97 F.3d 1296, 1300 (9th Cir. 1996).  The requirements of §1962(c) must be established as to each individual Defendant.  See United States v. Persico, 832 F.2d 705, 714 (2nd Cir. 1987), cert. denied, 486 U.S. 1022 (1988)("The focus of §1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are prescribed by §1962(c).").  Plaintiff has not pled the requisite participation with respect to each Defendant sued for violation of §1962(c).

Moreover, a plaintiff must properly allege at least one act of racketeering which caused his injury.  See Reddy v. Litton Indus., Inc., 912 F.2d 291, 294 (9th Cir. 1990), cert. denied, 502 U.S. 921 (1991).  A plaintiff may not state a RICO claim by simply parroting the language of the RICO statute.  See Advocacy Org. For Patients and Providers  v. Auto, 176 F.3d 315, 329 (6th Cir.).  No matter how many acts of racketeering are alleged, the Complaint will fail if it does not allege an injury proximately caused by an act of racketeering.  See Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268 (1992). As such, Plaintiff's RICO claim fails.

**B.    Plaintiff Has Failed to State a RICO Claim Pursuant to 18 U.S.C. §1962(a).**

Title 18 U.S.C. §1962(a) prohibits a person who receives income derived from a pattern of racketeering activity from using or investing such income in an enterprise engaged in interstate commerce.  Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1147 (9th Cir. 2008).  A violation of 18 U.S.C. §1962(a) requires proof of the following elements: (1) a person receives income derived directly or

13

indirectly from a pattern of racketeering activity; (2) that person uses or invests, directly or indirectly, any part or proceeds of such income in the acquisition of any interest in, or the establishment or operation of any enterprise; and (3) that enterprise is engaged in or its activities affect interstate or foreign commerce.

"[A] plaintiff seeking civil damages for a violation of §1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co., 981 F.2d 429, 437 (9th Cir. 1992). The Ninth Circuit directly addressed a claim under §1962(a), which requires the allegation of an investment injury separate and distinct from the injury flowing from the predicate acts. Sybersound Records v. UAV Corp., 517 F.3d. at 1149.   Plaintiff must allege that the investment of racketeering income was the proximate cause of his injuries.   Here, Plaintiff cannot allege that the investment of racketeering income was the proximate cause of his injuries. Plaintiff cannot allege an investment injury separate and distinct from the injury flowing from the predicate act, as required for a RICO claim brought under §1962(a).   Accordingly, Plaintiff's claim under 18 U.S.C. §1962(a) fails.

**C.**   **Defendant Governor Schwarzenegger in His Official Capacity Is Not a Proper RICO Defendant.**

Plaintiff has named Defendant Governor Arnold Schwarzenegger in both his official and individual capacities.   Suing a government official in his official capacity is the equivalent of suing the government, and the government cannot form the requisite criminal intent to be sued under RICO. Pedrina v. Chun, 97 F.3d 1296, 1300 (9th

Cir. 1996), <u>cert. denied</u>, 520 U.S. 1268 (1997)("[G]overnment entities are incapable of forming [the] malicious intent necessary to support a RICO action."). As such, Plaintiff's claim against Defendant Governor Schwarzenegger in his official capacity must be dismissed.

   **D.  Plaintiff Has Failed to State Claims for Violation of His "Federal Due Process/Conspiracy Against Rights" and "Common Law Conspiracy.**"

Plaintiff's second and third claims for due process violations and conspiracy against Rights fail to state proper claims for relief. Plaintiff alleges that Defendants knowingly conspired in late October 2004 to interfere with Plaintiff's rights by using ill-gotten proceeds to transmit false and misleading information to California's electorate regarding Proposition 66.

Defendants have a protected First Amendment right to voice their opinions about proposed legislation and may campaign and support groups in favor and against certain laws. Plaintiff's claim that Defendants transmitted false information to California's electorate fails to state a claim. The First Amendment bestows broad immunity on Defendants right to speech and petition the government. Defendants participation in democratic processes are protected. Defendants did not violate any of Plaintiff's constitutional rights by voicing their opinions about Proposition 66. As such, Plaintiff's second claim must fail.

Plaintiff's third claim for relief also fails to state a claim. To prevail on a claim for conspiracy to violate one's constitutional rights under §1983, the plaintiff must show specific facts to support the existence of the claimed conspiracy. <u>Burns v. County of King</u>, 883

F.2d 819, 821 (9th Cir. 1989).  The elements to establish a cause of action for conspiracy under §1983 are: (1) the existence of an express or implied agreement among the defendants to deprive plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.  <u>Ting v. United States</u>, 927 F.2d 1504, 1512 (9th Cir. 1991).  In addition, there must be an agreement or meeting of the minds to violate his constitutional rights.  <u>See Woodrum v. Woodward Co.</u>, 866 F.2d 1121, 1126 (9th Cir. 1989).  A formal agreement is not necessary: an agreement may be inferred from the defendant's acts pursuant to the scheme or other circumstantial evidence.  <u>See United States v. Clevenger</u>, 733 F.2d 1356, 1358 (9th Cir. 1984).

Here, Plaintiff has presented no evidence to support the existence of an agreement or meeting of the minds between Defendants, whether the agreement be specific or inferred from conduct, nor does he provide any evidence that the deprivation of his rights was the result of such an agreement.  As such, Plaintiff has not met his burden to designate specific facts showing that there is the existence of a conspiracy against Plaintiff's rights between Defendants.

## **CONCLUSION AND ORDER**

In an abundance of caution, Plaintiff will be afforded an opportunity to amend his Complaint to attempt to overcome the defects discussed above.  Accordingly, **IT IS HEREBY ORDERED**: (1) Plaintiff's Complaint is dismissed with leave to amend; (2) the Court Clerk is directed to send Plaintiff a civil rights form utilized by the Central District of California; and (3) Plaintiff is granted 30 days from the date of this Order within which to file a "First Amended Complaint."

The First Amended Complaint must be complete within itself and shall not incorporate by reference any new portion of the original Complaint or Amended Complaint.  Plaintiff may not add new parties without leave of the Court.  Failure to comply with the requirements set forth in this Order may result in a recommendation that this action be dismissed with prejudice.


DATED:  May 19, 2009                    _____/s/_____
                                        VICTOR B. KENTON
                                        UNITED STATES MAGISTRATE JUDGE